# EXHIBIT 1

# SHOPPING CENTER LEASE

THIS LEASE is made this          28th          day of          January          , 19 80  .
between     City View Partners, a Wyoming partnership

. lessor,

and SAFEWAY STORES, INCORPORATED, a Maryland corporation, lessee, on the following terms and conditions:

**1. Premises. Term.** Lessor hereby leases to lessee a portion of the following-described real property in the City of
Laramie                                , County of      Albany
State of    Wyoming                        :

> See Exhibit B attached hereto and made a part hereof.
> (It is understood and agreed that the legal description has not
> been attached hereto.  The parties agree that a final legal
> description shall be prepared and agreed upon by lessor and
> lessee on or prior to the date for approval of plans and
> specifications.  Said legal description shall be attached to
> this lease as Exhibit B by lease modification agreement.  In
> the event said final legal description is not approved by
> said date, either party may cancel this lease by notice to
> the other party.)

on which property lessor is to construct the        Gateway Plaza                        Shopping Center
(herein called the "shopping center") as shown on the plan dated      June 5, 1979, last revised
        July 17, 1979                    , attached hereto as Exhibit "A". The portion of the shopping
center hereby leased (herein called the "leased premises") is designated "Safeway" and outlined in RED on Exhibit "A", and
includes the building, or portion of building, and related improvements to be constructed thereon by lessor in accordance with
the provisions of this lease.

TO HAVE AND TO HOLD the leased premises, together with all appurtenances, for a term of
Twenty                        (    20'    ) years commencing        March 1        , 19  81  .
and ending      February 28, 2001.

2. Rent. Lessee agrees to pay rent in the sum of

DOLLARS

(S                    ) on the first day of each calendar month during the term by checks or drafts payable to and
mailed to                                                        . at

of as designated in writing by lessor. The rent for any fractional calendar month shall be prorated.

Store No.____466____ Div.  Denver
Location ____Laramie, Wyoming____
Document Date __Jan 28, 1980__
Page__1__of__12__pages

WY Plaza00001

2. **Rent.** Lessee agrees to pay the following rents, by checks or drafts payable to    **City View Partners**

and mailed to       1780 Westland Road
at                  Cheyenne, Wyoming 82001       .

or as designated in writing by lessor:

(a)  A fixed minimum rent in an amount to be computed in accordance with the provisions
of subsection (c) below, payable in advance on the first day of   each calendar month during the term.
The minimum rent for any fractional calendar month shall be prorated.

(b)  A percentage rent in the amount, if any, by which       one and one-quarter.    per cent ( 1-1/4 %)
of gross sales made by lessee in the leased premises in each calendar year of the lease  term exceeds the minimum rent
for the same calendar year.

The percentage rent paid by lessee shall not exceed an amount
equal to:

1)  Fifty percent (50%) of the fixed minimum rent in any calendar
year during the original term;

2)  Sixty-two and one-half percent (62.5%) of the fixed minimum
rent in any calendar year during the first option term.

3)  Seventy-five percent (75%) of the fixed minimum rent in any
calendar year during the second option term.

4)  Eighty-seven and one-half percent (87.5%) of the fixed minimum
rent in any calendar year during the third option term.

5)  One hundred percent (100%) of the fixed minimum rent in any
calendar year during the fourth option term.

6)  One hundred twelve and one-half percent (112.5%) of the fixed
minimum rent in any calendar year during the fifth option term.

7)  One hundred twenty-five percent (125%) of the fixed minimum rent
in any calendar year during the sixth option term.

If lessee occupies the leased premises for a fractional period of a calendar year, percentage rent for said fractional
period shall be prorated based on the annual rate of gross sales made by lessee in the leased premises during said fractional
period and the annual rate of minimum rent for said fractional period.

On or before the forty-fifth day following each December thirty-first during the term and the last day of the term lessee
shall mail to lessor, at the place where rent is payable, a statement showing gross sales made by lessee in the leased premises
during the term of this lease for the calendar year or portion thereof last preceding the due date of such statement together with
any percentage rent due.

Page 2 of 12

WY Plaza00002

The term "gross sales" as used herein shall not include any of the following: (1) credits or refunds to customers for merchandise returned or exchanged; (2) transfers of merchandise from the leased premises to other stores or warehouses of lessee or its affiliated companies; (3) any sales taxes or other taxes imposed under any laws, ordinances, orders or regulations, whether now or hereafter in force, upon or based upon the gross receipts of lessee or the sale or sales price of merchandise and which must be paid by lessee, whether or not collected by lessee from its customers; (4) returns of merchandise to shippers or manufacturers; (5) the net amount of discounts allowed to any customer pursuant to any customary and reasonable policy adopted by lessee, including in such discounts, but not by way of limitation, the net amount of any discounts allowed by way of or resulting from the issuance to customers of trading stamps or other evidences of purchase for immediate or future exchange for merchandise or other things of value; and (6) merchandise or other things of value issued in redemption of such trading stamps or other evidences of value, or issued as a premium or otherwise in connection with any sales promotion program of lessee. Lessor agrees to hold in confidence all sales and related information furnished by lessee. Lessee makes no representation or warranty as to the sales which it expects to make in the leased premises.

(c)  The minimum monthly rental payable in accordance with 2(a) above shall be a sum equal to the aggregate of:

1.  A rental attributable to land in the amount of $3,453.92 per month.

2.  One-twelfth (1/12th) of Eleven and 78/100 percent (11.78%) of that portion of the actual cost to lessor incurred in the construction of the leased premises and 136,560 square feet of common area improvements (excluding street widening) all as shown on Exhibit "A" and to be covered by the plans and specifications referred to in Paragraph 5 hereof (including, but not limited to, the construction contract price for the construction of said building and improvements, the on-site cost of bringing utility services to said building, architectural fees not to exceed five percent (5%) of said contract price, contractor's performance bond, surveys and soil tests) up to

    ONE MILLION, EIGHT HUNDRED THIRTY THREE THOUSAND, NINE HUNDRED TWENTY FIVE AND NO/100----------------------------Dollars ($1,833,925.00)

    Said construction costs shall also include financing costs, and the cost of certain off-site improvements. However, said construction costs shall not include legal fees and real estate commissions.

3.  One-twelfth (1/12th) of Eleven and 78/100 percent (11.78%) of the actual cost to lessor in the construction of said building and improvements (referred to in Paragraph 2 above) which are in excess of

    ONE MILLION, EIGHT HUNDRED THIRTY THREE THOUSAND, NINE HUNDRED TWENTY FIVE AND NO/100----------------------------Dollars ($1,833,925.00)

    in the event lessee shall agree to assume said additional costs in accordance with the provisions hereinbelow.

Upon mutual approval of the plans and specifications as provided for in Paragraph 5, lessor shall obtain a negotiated bid for the construction of the lessee's building and related improvements, together with the costs referred to in Paragraph 2(c)2 from a general contractor approved in writing by lessee.

In the event the negotiated bid for the construction of the lessee's building and related improvements, together with the costs referred to in Paragraph 2(c)2 exceeds

    ONE MILLION, SEVEN HUNDRED FIFTY THREE THOUSAND, SEVEN HUNDRED THIRTY FIVE AND NO/100----------------------------Dollars ($1,753,735.00)

lessor shall obtain bids for said improvements from at least three (3) general contractors approved in writing by lessee, and that lessee shall have the right to review and approve all bids received by lessee.

WY Plaza00003

In the event the lowest negotiated or competitive bid for the construction of the lessee's building and related improvements, together with the costs referred to in Paragraph 2(c)2 exceeds

ONE MILLION, EIGHT HUNDRED THIRTY THREE THOUSAND, NINE HUNDRED TWENTY FIVE AND NO/100——————————————————————Dollars ($1,833,925.00)

either lessor or lessee may terminate this lease by notice to the other party; provided, however, that in the event either party shall give such notice of termination, the other party shall have thirty (30) days within which to elect to assume such additional costs. In the event lessor should elect to assume such additional costs, lessor shall absorb such additional costs without any increase being made in the minimum monthly rental provided for above. In the event lessee shall be the party who elects to assume such additional costs, such additional costs shall be paid by lessor but said costs shall become a part of the basis for computing the monthly minimum rental in accordance with the provisions hereinabove. In no event shall lessor be deemed to have assumed such additional cost without any increase being made in the monthly minimum rental unless such assumption is in writing signed by lessor.

3. Lessor's title. Short Form Lease. Zoning. Lessor covenants that lessor has lawful title to the shopping center and full right to make this lease. This lease shall not be recorded; however, to establish the status of lessor's title and to establish the priority of lessee's lease, lessor and lessee shall, simultaneously with the execution of this lease, execute a short form of this lease which shall be recorded by lessee immediately after execution at the expense of lessor. Within thirty (30) days after the date of recording the short form lease, lessor, at its expense, shall provide lessee with current evidence, satisfactory to lessee from a responsible title insurance company of the status of lessor's title to the shopping center and with a licensed surveyor's recent survey of the shopping center which is satisfactory to lessee. Lessor further covenants that, at the time of the recording of the short form lease, the shopping center will be free from encumbrances except those agreed to in writing by lessee and that there will be no zoning or other ordinances, or title or other matters, except those agreed to in writing by lessee, which will restrict lessee's operation of a general mercantile business (including the sale of alcoholic beverages if not prohibited by law and if lessee obtains all necessary licenses and/or permits at lessee's expense) in the leased premises or the use of the common areas of the shopping center as provided for in this lease, and that so long as lessee is not in default lessee shall have quiet and peaceful possession of the leased premises and enjoy all rights herein granted without interference. In the event of any violation of any of the covenants made by lessor in this paragraph, lessee may cancel this lease provided lessee gives lessor notice of the violation and it is not corrected within twenty (20) days after lessor's receipt of said notice.

This lease shall be paramount and superior to all deeds of trust and mortgages now or hereinafter affecting the leased premises, except as hereinafter provided. In the event any bona fide loan secured by a deed of trust or mortgage is made a lien against the shopping center and the lender shall first complete, execute and acknowledge a Subordination, Attornment and Nondisturbance Agreement in the form attached hereto and by this reference made a part hereof as Exhibit "C", lessee shall subordinate this lease to the aforesaid lien by executing and acknowledging the aforesaid Subordination, Attornment and Nondisturbance Agreement, provided lessor shall thereafter cause, at its expense, to have the fully executed and acknowledged Subordination, Attornment and Nondisturbance Agreement recorded.

4. Common areas. Completion of shopping center. All those portions of the shopping center not shown as building areas on Exhibit "A" shall be common areas for the sole and exclusive joint use of all tenants in the shopping center, their customers, invitees and employees, and lessor hereby grants to lessee and its customers, invitees and employees the right of such exclusive joint use of all of said common areas. Lessor agrees that, at lessor's expense, all common areas will be maintained in good repair, kept clean and kept clear of snow and ice and adequately lighted when stores are open for business. Lessor agrees that all buildings in the shopping center shall not exceed thirty-five feet (35') / in height (but may include mezzanines). Lessor further agrees within Phase I of that all buildings / the shopping center/other than the building on the leased premises will be completed as shown on Exhibit as shown on Exhibit "A" "A" and ready for occupancy/by not later than the lease commencement date as specified in Paragraph 1, that, in the (except future building area) event any buildings are constructed within Phase II of the shopping center as shown on Exhibit "A", such buildings will be constructed only within the building areas shown on Exhibit "A" and that no buildings will be constructed within Phase II unless all the common areas within Phase II as shown on Exhibit "A" are completed simultaneously; that, following completion of construction of Phase I and/or any portion of

WY Plaza00004

Phase II / the sizes and arrangements of said buildings and common areas (including parking areas and traffic circulation and flow pattern will not be changed without lessee's written consent, and that it said buildings are not so completed or if said sizes or arrangements are changed without lessee's written consent, lessee may by notice to lessor.

The provisions of Paragraphs 4 and 5 hereof notwithstanding, in the event lessor has not commenced the construction of within Phase I of all buildings / the shopping center including the building on the leased premise on or before (except future building area) June 1 , 19 80 , lessee may cancel this lease by notice to lessor. The words "commenced the construction" as used herein being defined to mean the completion of foundations of all such buildings.

5. **Construction of common areas and lessee's building. Plans and specifications.** Lessor agrees, at lessor's sole cost, risk and expense, to construct on the common areas within Phase I shown on Exhibit "A" , all parking and service areas, sidewalks, driveways and related improvements shown on Exhibit "A" and to construct on the leased premises a building or portion of a building, all in accordance with plans and specifications to be prepared at lessor's expense by Randall E. Larsen & Associates (architect), and approved in writing by lessor and lessee. Lessee shall furnish lessor with drawings and/or specifications setting forth lessee's requirements to be incorporated in the plans and specifications to be prepared by the architect. Upon approval by the parties, the plans and specifications shall become a part of this lease as though set out in full herein. If, for any reason whatsoever, the plans and specifications are not approved by both parties on or before March 1 , 19 80 , either party may cancel this lease by notice to the other party within ninety (90) days thereafter. Lessee may have the plans and specifications revised, at lessor's expense, if more than ninety (90) days elapse between the date of approval of plans and specifications and the date of commencement of construction of the building on the leased premises. Lessor agrees to complete said construction work (which shall include lessor's obtaining and furnishing to lessee of any certificate of occupancy or like document required by lawful authority) by not later than the date of commencement of the term of this lease specified in Paragraph 1. Lessee may enter upon the leased premises during the course of construction to inspect the construction work and to install its fixtures and equipment and such entry shall not constitute acceptance of possession of the leased premises by lessee.

6. **Acceptance of possession.** The term of this lease shall not commence until lessee accepts possession of the leased premises. Lessee shall accept possession of the leased premises (1) upon completion of construction of the buildings in the shopping center other than the leased premises in accordance with Paragraph 4, and (2) when the work referred to in Paragraph 5 is fully completed in accordance with the plans and specifications and exclusive possession of the leased premises is delivered to lessee. If lessee accepts possession of the leased premises on a date other than the commencement date specified in Paragraph 1, the term shall commence on the date lessee accepts possession . and expire twenty (20) years there-after. . If, for any reason whatsoever, the leased premises are not ready for occupancy within ninety (90) days after the commencement date specified in Paragraph 1, lessee may cancel this lease by notice to lessor. Notwithstanding the provisions of Paragraph 2, the rent shall not commence, become due, or be payable until thirty (30) days after the term of this lease commences or until the date lessee opens for business in the leased premises, whichever shall first occur.

WY Plaza00005

**7. Lessor's repairs.** Lessor agrees to keep the building structure on the leased premises (including, without limitation, the roof, roof structures and supports, foundation and structural supports, walls, structural portion of the floors, chimneys, skylights, gutters, downspouts and exterior doors) and all heating, ventilating and cooling equipment, wiring, plumbing, sprinkler system and plate glass in good repair during the lease term and to paint the exterior when needed in colors approved by lessee. If lessee is deprived of the use of a substantial portion of the leased premises during the making of any repairs, improvements or alterations by lessor under any provision of this lease, the rent shall be abated or proportionately reduced according to the extent to which lessee is deprived of such use.

Notwithstanding the foregoing, lessor shall not be responsible for mainten-ance and repair after the first twelve months of the lease term, except in those instances where the lessor has assumed the repair responsibility elsewhere in this lease. Lessor agrees to assign to lessee all construction and material warranties and guarantees to the construction of improvements on the leased premises.

In the event any percentage rent shall be payable to lessor under Paragraph 2 of this lease for any calendar year, all sums paid by lessee under this paragraph for structural repairs to the building on the leased premises (including, without limitation, the roof, roof structures and supports, foundation and structural sup-ports, walls, structural portion of the floors) during the same calendar year, shall be deducted from the percentage rent otherwise payable to lessor.

**8. Lessee's repairs. Utilities.** Lessee agrees to repair all damage to the leased premises caused by lessee's use other than (1) ordinary wear and tear and (2) those instances where the lessor has assumed the repair responsibility elsewhere in this lease, and that on surrendering possession it will leave the leased premises in good condition, allowance being made for ordinary wear and tear, damage by fire, the elements or other casualty, or resulting from the acts of persons other than lessee, or from defects therein, being excepted. Lessee may make such repairs, alterations and improvements to the leased premises as lessee deems desirable but lessee agrees not to permit any liens to stand against the leased premises for work done or materials furnished. Lessee may paint the interior of the building on the leased premises in such colors as lessee elects. Lessee shall have the exclusive right to paint, erect or authorize signs in, on or about the building on the leased premises and may, at any time, remove signs and color effects installed by lessee. On surrendering possession lessee shall not be required to restore the leased premises to their condition at the commencement of the term, and lessor agrees to accept the leased premises with alterations and improvements made by lessee. Lessee agrees to pay all charges for electricity, gas, heat, water, telephone and other utility services used by lessee on the leased premises.

**9. Lessee's fixtures.** Lessee may install in the leased premises such fixtures and equipment as lessee deems desirable and all of said items shall remain lessee's property whether or not affixed or attached to the leased premises. Lessee may remove said items from the leased premises at any time but shall repair any damage caused by removal.

WY Plaza00006

10. **Compliance with laws.** Lessee agrees not to violate any law, ordinance, rule or regulation of any governmental authority having jurisdiction of the leased premises and, if required solely by reason of lessee's type of business, to make nonstructural repairs, improvements and alterations to the interior of the building on the leased premises required by such authority. Lessor agrees to make all other repairs, improvements or alterations to the leased premises and the common areas required by such authority.

11. **Damage by casualty.** If the leased premises are damaged by fire, the elements or other casualty, lessor shall promptly repair all damage and restore the leased premises to their condition just prior to the damage. If lessee is deprived of the use of any substantial portion of the leased premises either by reason of said damage or during restoration, the rent shall be abated or proportionately reduced according to the extent to which lessee is deprived of such use. Lessor agrees to keep in effect on the leased premises fire insurance with extended coverage endorsement in an amount not less than eighty per cent (80%) of the insurable value of the building improvements thereon. and with lessor and mortgagee named as additional insureds Unless this lease is terminated as provided below, the insurance proceeds shall be used for the repair or restoration of the leased premises. If lessee's / insurance policy permits the release of others from liability for loss from casualties insured against, such release from liability is hereby granted to lessor / to the extent of lessee's actual recovery of loss under such policy. If the leased premises are damaged by fire, the elements or other casualty to the extent of seventy-five per cent (75%) or more of the insurable value thereof, lessee or lessor may terminate this lease as of the date of the damage by notice to lessor within thirty (30) days after said date, in which event the insurance proceeds payable due to such damage or destruction shall be paid to lessor or its mortgagee. If any ad-joining buildings are constructed in such a manner as to make a sprinklered rate inapplicable for the insurance to be provided by lessee as required herein, lessor shall reimburse lessee for the difference between the sprinklered rate and the un-sprinklered rate on lessee's building on the leased premises.

12. **Condemnation.** If any portion of or interest in the shopping center including, without limitation, the leased premises, the common areas, and the other buildings in the shopping center, shall be taken or damaged under any right of eminent domain or any transfer in lieu thereof, and such taking or damage renders the leased premises unsuitable in the judgment of lessee for lessee's business operations, lessee may cancel this lease by notice to lessor within thirty (30) days after such taking or damage deprives lessee of possession of any portion of the leased premises or of any other rights of lessee under this lease. If this lease is not so terminated, lessor shall promptly restore the shopping center to an architectural unit as nearly comparable as practicable to the unit existing just prior to such taking or damage and this lease shall continue, but, commencing with the date on which lessee is deprived of the use of any portion of the leased premises or of any rights under this lease, the rent shall be abated or proportionately reduced according to the extent to which lessee is deprived of such use or rights. Nothing contained herein shall prevent lessor and lessee from prosecuting claims in any condemnation proceedings for the values of their respective interests. It is agreed that the taking of up to 25 feet of the shopping center immedi-ately adjacent to Third Street for street widening purposes shall not give lessee the right to cancel under this paragraph, provided that such taking does not ad-versely affect the access rights from the shopping center to said adjacent street.

13. **Assignment and subletting.** Lessee shall not assign this lease nor sublet the leased premises without lessor's written consent, which shall not be unreason-ably withheld. If lessee assigns this lease, lessee shall remain liable as a surety to lessor for full performance of lessee's obligations. If lessee wishes to assign this lease or to sublet the leased premises, lessee shall give lessor sixty (60) days prior written notice, and lessor, within thirty (30) days after receiving said notice, at its option shall either have the right to give lessee its consent

WY Plaza00007

or the right to cancel this lease as of the proposed commencement date of such assignment or sublease free and clear of such proposed assignment or sublease.  If lessor does not cancel this lease within said thirty (30) day period, lessor shall be deemed to have consented to the proposed assignment or sublease.  As an exception to the foregoing provisions, lessee may, without giving lessor notice as provided above and without lessor's consent, assign this lease or sublet the leased premises to any affiliated or successor company, or sublet portions of the leased premises to concessionaires.  Lessor shall have the right to assign, sell, convey or transfer any of its rights under this lease, provided, however, that lessor has completed construction of all common areas and building of the shopping center within Phase I as shown in Exhibit "A", excluding any future building areas shown thereon, and is not then in default under any of the provisions of this lease, and, further, if lessor assigns this lease, the assignee shall at all times be responsible and liable for compliance with all obligations under the terms, provisions and conditions of this lease and shall execute an agreement assuming lessor's obligation for lessee's benefit.  If lessor assigns this lease in compliance with the foregoing, lessor shall thereupon be relieved of any further obligation hereunder.

14. Indemnification.  Lessee agrees to indemnify lessor against and save lessor harmless from all demands, claims, causes of action or judgments, and all reasonable expenses incurred in investigating or resisting the same, for injury to person, loss of life or damage to property occurring on the leased premises and arising out of lessee's use and occupancy, except if caused by the act or neglect of lessor, its contractors, agents or employees, or occurring on the common areas if caused by the act or neglect of lessee, its contractors, agents or employees. Lessor agrees to indemnify lessee against and save lessee harmless from all demands, claims, causes of action or judgments, and all reasonable expenses incurred in investigating or resisting the same, for injury to person, loss of life or damage to property occurring on the common areas, except if caused by the act or neglect of lessee, its contractors, agents or employees, or occurring on the leased premises if caused by the act or neglect of lessor, its contractors, agents or employees, or occurring anywhere within the shopping center prior to the commencement of the term. The parties shall maintain adequate insurance covering their obligations under this paragraph in respect of injury to person and loss of life and furnish each other with evidence of such coverage.

15. Default.  If lessee shall be in default for more than twenty (20) days after receipt of lessor's notice specifying such default, lessor may declare the term ended and re-enter the leased premises with or without process of law. If lessor shall be in default for more than twenty (20) days after receipt of lessee's notice specifying such default, lessee may incur any expense necessary to perform any obligation of lessor specified in such notice and deduct such expense from the rents thereafter to become due. The performance of each and every covenant and agreement by lessor herein contained shall be a condition precedent to lessor's right to collect rents or enforce this lease.

WY Plaza00008

16.  Options for renewal.  Lessee, at lessee's option, by giving lessor sixty (60) days' written notice before the expiration of the term or option term then in effect, may extend the term of this lease for six (6) separate and additional periods of five (5) years each on the same terms and conditions, except that lessee, by giving lessor one hundred eighty (180) days' written notice, may cancel any option term then in effect.  **Lessee's right of cancellation as provided for in this paragraph shall not apply to those option periods extended by lessee pursuant to paragraph 20(g)(5) herein.**

17.  Holding over.  If lessee remains in possession of the leased premises after the expiration of this lease, such continued possession shall, if rent is paid by lessee and accepted by lessor, create a month-to-month tenancy on the terms herein specified, and said tenancy may be terminated at any time by either party by thirty (30) days' notice to the other party.

18.  Notices.  Any notice provided for herein shall be given by registered or certified United States mail, postage prepaid, addressed, if to lessor, to the person to whom the rent is payable at the address to which the rent is then mailed, and, if to lessee, to it at

The person and the place to which notices are to be mailed may be changed by either party by notice to the other party.

19.  Deleted.

20.  Future expansion.  It is understood and agreed that lessee, at any time during the lease term, may have a building addition made to the leased premises. Said building addition is to be located within that portion of the common area shown outlined in GREEN on Exhibit "A" and marked "Safeway Expansion Area." It is also agreed that in connection with the building addition to the leased premises, lessee may have the then existing building on the leased premises remodeled (said building addition and said remodeling, if its inclusion is requested by lessee is hereinafter referred to as "said addition"). Said addition shall be made on the following terms and conditions.

(a) If lessee desires said addition, it shall give written notice to lessor and request lessor to build said addition according to plans and specifications which shall be prepared by lessee and approved by lessor, said approval not to be unreasonably withheld. Lessor shall obtain bids for said addition from at least three (3) general contractors approved by lessee; lessee shall have the right to review and approve all bids received by lessor, and the award of the contract.

(b) Commencing on the date of completion of said addition by lessor in accordance with the plans and specifications, the minimum monthly rent payable by lessee under Paragraph 2(a) hereof shall be increased by that amount necessary to fully amortize the cost of said addition with interest on the monthly declining straight line balance thereof at the rate which lessor **at the time of completion plus $168.30 per month** has to pay to finance said addition over the remainder of the original term (or at lessee's election, also over one or more option terms which shall be exercised by lessee in the hereinafter mentioned Lease Modification Agreement) from the date of completion. Lessor agrees to diligently seek the lowest rate available. **not to exceed 1% above the Industrial "A" rated bond rate (long term), in effect**

(c) If lessor advises lessee within thirty (30) days of lessee's written notice that it is unable or unwilling to construct said addition or if construction has not commenced within sixty (60) days after the approval of the plans and specifications, as aforesaid, then lessee may, at its sole cost and expense, make such addition to the leased premises; provided, however, that (1) said addition is in accordance with the aforesaid approved plans and specifications, (2) there shall be — additional minimum rent **in the amount of $168.30 per month** payable by lessee/and (3) lessee will indemnify and save harmless lessor from and against any and all manner of claims for liens, for wages or materials, or for damage to person or property caused during the making of or in connection with said addition. In the event lessee chooses to make the addition, lessor hereby gives lessee its consent to alter the shopping center common areas in the vicinity of the leased premises to the extent lessee finds necessary to construct said addition and to conveniently use the leased premises as expanded. Lessor hereby gives its consent to any action taken by lessee in applying for any and all permits, licenses, certificates, variances or other entitlements for use (hereinafter "permits") which lessee finds necessary or desirable and lessor hereby appoints lessee its agent for applying for said permits. Lessor further agrees to cooperate with lessee in arranging for the release and/or relocation and/or the granting of any utility easements as may be required by lessee for said addition.

(d) If lessee constructs said addition, lessee may deduct from percentage rent, if any, otherwise payable under the provisions of this lease for any calendar year after all other offsets and deductions against percentage rent provided in this lease are first taken, an amount equal to said percentage rent until such time as the balance in the amortization account, as hereinafter created, equals zero. An amortization account shall be created to record the operation of the provisions of this paragraph. The original balance of said account shall be the cost of said addition. Interest, at the Industrial "A" rated bond rate (long-term) in effect at the time of completion of said addition, shall accrue on the balance of said account for the previous calendar year on January 1 of each year. Interest shall be prorated from the date of completion to December 31 of the year of completion of said addition. After accrual of said interest, lessee shall deduct from said account an amount equal to the amount to be deducted, under the provisions of this paragraph, from percentage rent.

(e) The "cost of said addition" as used herein shall include architect fees for preparation of plans and specifications, the construction contract price for the construction and making of said addition (including site development and parking improvements, contractor's performance bond, surveys, soil tests, permit fees, and other costs directly relating to the construction), and shall include legal fees or finance costs not to exceed 3% of the cost of said addition.

(f) The "cost of said addition" shall be determined by the party having said addition made furnishing the other party, within sixty (60) days of the completion of said addition, paid invoices, contracts or such other documents as establish the payment or obligation to pay for the cost of said addition.

(g) Upon completion of said addition and determination of the cost of said addition, but in no event later than ninety (90) days after completion of said addition, the lessor and lessee shall execute a Lease Modification Agreement which shall set forth (1) the cost of said addition, (2) the date of completion of said addition, (3) the new extent of the leased premises, by including the expansion area within the RED outline on a new Exhibit "A" to the lease, (4) the interest rate which lessor has to pay to finance said addition* at the time of completion of said addition, plus additional minimum rent in the amount of $168.30[5] if lessor constructed said addition, shall exercise the option periods, if any, which lessee has elected to use in the amortization of the cost of said addition, as provided in (b) above, and (6) set forth the revised minimum monthly rent as noted above.

*not to exceed 1% above the Industrial "A" rated bond (long term), in effect

21. Separation of uses. Lessor recognizes lessee's customers' need for adequate parking facilities in close proximity to the leased premises, and the importance of protecting such parking facilities against unreasonable or undue encroachment which is likely to result from long-term parking by patrons or employees of certain types of business establishments. Lessor further recognizes lessee's interest in not having tenants occupying space in close proximity to the leased premises who create or cause excessive noise, litter or odor. To safeguard lessee's interest in a clean, quiet and odor free environment and adequate parking for its customers, lessor convenants and agrees that it shall not permit the use or operation of any portion of the shopping center, within (a) two hundred feet (200') of any exterior building wall of the leased premises for a restaurant (fastfood or sit-down) or entertainment or recreational activities such as, but not limited to, bowling alleys, theaters, carnivals or other places of public or private amusement., and (b) three hundred feet (300') of any exterior building wall of the leased premises for a bowling alley and theater.

22. Remedies cumulative. No remedy herein conferred upon or reserved to lessor or lessee shall exclude any other remedy herein or by law provided, but each shall be cumulative and in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute.

WY Plaza00010

23. **Automatic termination.** Notwithstanding anything herein to the contrary, if this lease has not previously been terminated and term of this lease has not commenced by five (5) years from the date of this lease, this lease shall thereupon automatically terminate.

24. **Attorney's fees.** If lessor or lessee files a suit against the other which is in any way connected with this lease, the unsuccessful party shall pay to the prevailing party a reasonable sum for attorney's fees, which shall be deemed to have accrued on the commencement of such action and shall be enforceable whether or not such action is prosecuted to judgment.

25. **Paragraph headings.** The paragraph headings of this lease are inserted only for reference and in no way define, limit, or describe the scope or intent of this lease nor affect its terms and provisions.

26. **Lease execution and change.** It is understood and agreed that until this lease is fully executed and delivered by both lessor and the authorized corporate officers of lessee there is not and shall not be an agreement of any kind between the parties hereto upon which any commitment, undertaking or obligation can be founded. It is further agreed that once this lease is fully executed and delivered that it contains the entire agreement between the parties hereto and that, in executing it, the parties do not rely upon any statement, promise or representation not herein expressed and this lease once executed and delivered shall not be modified, changed or altered in any respect except by a writing executed and delivered in the same manner as required for this lease.

27. **Rights of successors.** All of the rights and obligations of the parties under this lease shall bind and inure to the benefit of their respective heirs, personal representatives, successors and assigns.

28. __Real Property Taxes__. Lessor agrees to pay all real property taxes on the entire shop-ping center and all improvements thereon with reimbursement by lessee of a portion the reof as hereinafter provided. Lessor agrees to obtain separate tax bills on lessee's building, the remaining buildings in Phase I of the shopping center, and all of the land in Phase I of the shopping center. Upon receipt of satisfactory evidence from lessor, lessee agrees within thirty (30) days of receipt to pay all taxes assessed against the building on the leased premises and lessee's share of the taxes assessed against the land of the shopping center. Lessee shall not be obligated to pay any portion of any penalty for delinquent payment by lessor of such taxes. Any tax reimbursement by lessee hereunder shall be prorated as of the commencement date or termination or expiration date of this lease.

"Lessee's share" as used herein shall be a fraction, the numerator of which shall be the building area on the leased premises and the denominator of which shall be the total building area in Phase I of the shopping center, (as outlined in brown), including the building on the leased premises as shown on Exhibit "A" designated as Phase I. In the event lessor is unable to obtain a separate tax bill on lessee's building, lessee shall pay its share of taxes on the shopping center building area as "lessee's share" as defined above, provided, however, that the fraction for computing lessee's share shall have as its numerator the building floor area on the leased premises and the denominator shall have the total building floor area in Phase I of the shopping center as outlined in brown on the attached Exhibit "A".

WY Plaza00011

29. <u>Common Area Maintenance Reimbursement</u>. Lessee agrees to reimburse lessor for lessee's share of the actual costs incurred by lessor in lighting the Phase I common areas, in keeping same striped, clean and cleared of snow and ice and in maintaining the common areas in good repair, excluding, however, the costs of any capitalizable improvements or additions to the common areas. Lessee shall so reimburse lessor after receipt of satisfactory evidence of said costs and the amount due from lessee, but not more often than once each month. Lessee's share shall be a fraction of said costs, the numerator of which fraction shall be the building area on the leased premises and the denominator of which shall be the total building area in Phase I of the shopping center, including the building on the leased premises, as outlined in brown on Exhibit "A". Lessor agrees that in no event shall the amounts payable by lessee under this paragraph in any calendar year exceed the sum of twenty cents (20c) per calendar year for each square foot of the building area on the leased premises for the first five (5) years of the lease term; twenty-five cents (25c) per calendar year for each square foot of the building area on the leased premises for the second five (5) years of the lease term; thirty cents (30c) per calendar year for each square foot of the building area on the leased premises for the third five (5) years of the lease term; thirty-five cents (35c) per calendar year for each square foot of the building area on the leased premises for the fourth five (5) years of the lease term.

During any option period, if exercised by lessee pursuant to Paragraph 16 hereof, common area maintenance ceiling, as hereinabove provided, shall be of no further force and effect, and lessee's share shall be defined as hereinabove stated.

CITY VIEW PARTNERS,
(a Wyoming partnership)

By_____
      Its _____    Partner

By_____
      Its            Partner

(Lessor)

SAFEWAY STORES, INCORPORATED
(a Maryland corporation)

By_____
      Its Vice President

By_____
      Its Assistant Secretary

(Lessee)

(Corporate Seal)

Page 12 or 12

STATE OF          )
               ) ss.
COUNTY OF        )

On this ~8 day of _MAU_ , 1980, before me, the undersigned,
a Notary Public in and for said County and State, personally appeared
_C McCreedhven_ and _Frances Furmiser_ , known to me
to be _Partners of Citii Vice Partners_ , of the general partners
of the partnership that executed the within instrument and acknowledged
to me that such partnership executed the same.

My notarial commission expires: _2.3.81_

WITNESS my hand and official seal.

(Notarial Seal)

_____

SUZANNE SKINNER · Notary Public
County of Albany     State of Wyoming
My Commission expires Feb. 3, 1981

_Suzanne Skinner_

NOTARY PUBLIC in and for the State of
_Wyoming_ , with principal office
in the County of _Albany_


STATE OF CALIFORNIA )
               ) ss.
COUNTY OF ALAMEDA )

The foregoing instrument was acknowledged before me this   7th   day
of   April   , 19 80 , by  JOSEPH T. ZICHICHI  ,
as Assistant Vice President, and   RICHARD H. COSTELLO   , as
Assistant Secretary, of SAFEWAY STORES, INCORPORATED, a corporation
duly organized and existing under and by virtue of the laws of the
State of Maryland.

My notarial commission expires:     - March 13, 1983    .

WITNESS my hand and official seal.

(Notarial Seal)

_Marlene R. Collins_

OFFICIAL SEAL
MARLENE R. COLLINS
NOTARY PUBLIC · CALIFORNIA
COUNTY OF ALAMEDA
My Commission Expires March 18, 1983

MARLENE R. COLLINS
NOTARY PUBLIC in and for the State of
California, with principal office in
the County of Alameda.

Colorado Acknowledgment.

WY Plaza00013

## LEGAL DESCRIPTION

Lot 4, Block 1, Gateway Subdivision, County of Albany, State of Wyoming, according to the recorded plat thereof.

EXHIBIT "A"

WY Plaza00014