IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

FILED

U.S. DISTRICT COURT
DISTRICT OF WYOMING

12:53 pm, 10/20/20

**U.S. Magistrate Judge**

SAFEWAY STORES 46, INC.,

        Plaintiff,

vs.

WY PLAZA, L.C.,

        Defendant.

Case No.  19-CV-143-R

---

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. 23]
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. 25]

---

This matter is before the Court on Plaintiff's *Motion for Summary Judgment* (ECF. No. 23) and Defendant's *Motion for Summary Judgment* (ECF No. 25). This case involves a dispute over a forty-year-old commercial lease. Lessee Safeway sued lessor WY Plaza over a lease provision that permits Safeway to deduct the cost of a 2001 building addition from rent payments. Both sides have moved for summary judgment on all of Plaintiff's claims.

The issues raised between the two motions are: (1) whether WY Plaza's affirmative defenses, including laches, bar Safeway's claims; (2) if not, whether WY Plaza breached the lease; (3) whether WY Plaza breached the covenant of good faith and fair dealing; (4) whether "money had and received" and "money paid by mistake" are tenable claims when a valid contract exists, and if so, whether Safeway is entitled to relief under those theories; and finally (5) whether declaratory judgment is appropriate for summary judgment, and if so, what that judgment should be.

Having carefully considered the matter, the Court concludes the doctrine of laches bars Safeway's action in all respects. Additionally, and independently, the Court also finds that WY Plaza did not breach the lease or the covenant of good faith and fair dealing. The Court also finds "money had and received" and "money paid by mistake" are nonviable claims in this case. Because laches bars the action, the Court does not need to address declaratory judgment and anticipatory breach of contract.

**BACKGROUND**

The following facts are undisputed. Safeway and WY Plaza, through their predecessors in interest, entered a lessor-lessee relationship on January 29, 1980. Under the lease, Safeway has operated a grocery store in WY Plaza's shopping center in Laramie, WY for over four decades. Relevant provisions of the lease include Article 2 and Article 20.

The terms for calculating rent are found in Article 2. Article 2(a) computes the monthly "fixed minimum rent" in accordance with Article 2(c). Article 2(b) calculates the annual payment of "percentage rent" in the amount of one-quarter percent (1-1/4%) of Safeway's gross sales that exceed the minimum rent for that calendar year.  Article 20 provides the terms for the possibility of an expansion to the shopping center. Under Article 20(a)–(c), Safeway had the option to construct an addition to the leased premises. Relevant sections read:

> (a) If lessee desires said addition, it shall give written notice to lessor and request lessor to build said addition according to plans and specifications which shall be prepared by lessee and approved by lessor, said approval not to be unreasonably withheld.
>
> (b) If lessor advises lessee within thirty (30) days of lessee's written notice that it is unable or unwilling to construct said addition of if construction has not commenced within sixty (60) days after the approval of the plans and specifications, as

2

> aforesaid, then lessee may, at it sole cost and expense, make
> such addition to the leased premises . . . ."

In September of 2000, Las Vegas Retail, LLC (WY Plaza's predecessor in interest)

approved Safeway's construction plans and waived any right to construct the addition on their

own. Safeway constructed the addition in May of 2001. Upon completion, Article 20(d) of the

lease allowed Safeway to deduct construction costs plus interest from its annual percentage

rent obligation until all the costs had been fully recovered. The interest rate would accrue on

the balance of the amortization account for the previous calendar year on January 1 of each

year.  Specifically, Article 20(d) provides:

> If lessee constructs said addition, lessee may deduct from
> percentage rent, if any, otherwise payable under the provisions of
> this lease for any calendar year . . . an amount equal to said
> percentage rent until such time as the balance in the amortization
> account, as hereinafter created, equals zero.
>
> An amortization account shall be created to record the operation
> of the provisions of this paragraph. The original balance of said
> account shall be the cost of said addition. Interest, at the Industrial
> "A" rated bond rate (long-term) in effect at the time of completion
> of said addition, shall accrue on the balance of said account for
> the previous calendar year on January 1 of each year. [After]
> accrual of said interest, lessee shall deduct from said account an
> amount equal to the amount to be deducted, under the provisions
> of this paragraph, from percentage rent.

Article 20(g) further provides:

> [u]pon completion of said addition and determination of the cost
> of said addition, but in no event later than ninety (90) days after
> completion of said addition, the lessor and lessee shall execute a
> Lease Modification Agreement which shall set forth (1) the cost
> of said addition, (2) the date of completion of said addition, (3)
> the new extent of the leased premises, by including the expansion
> area within the RED outline on a new Exhibit "A" to the lease,
> (4) the interest rate which lessor has to pay to finance said

3

addition at the time of completion of said addition, plus additional minimum rent in the amount of $168.30 per month; and . . . (6) set forth the revised minimum monthly rent as noted above.

On November 30, 2001, about six months after Safeway constructed the addition, WY Plaza purchased the shopping center from Las Vegas Retail, LLC. On March 20, 2002, WY Plaza and Safeway entered into the Fifth Shopping Center Lease Modification Agreement ("fifth modification") based on Article 20(g).[1] The fifth modification detailed Safeway's May 1, 2001 addition at a cost of $2,577,717 and expansion of 7,550 square feet. The fifth modification also increased Safeway's rent by $168.30 per month, and increased the pro-rata share of real estate taxes and common area maintenance expenses. The fifth modification left the remainder of the existing lease in full force and effect. The years following the fifth modification appear to be uneventful between Safeway WY Plaza until 2010.

### Safeway's 2010 Letter and the Estoppel Certificate

On February 12, 2010, Safeway sent a letter to WY Plaza claiming Safeway had mistakenly overpaid rent from 2005 to 2008. Safeway claimed they overpaid because they failed to deduct the total annual minimum rent from percentage rent. Safeway claimed they had overpaid solely based on their percentage rent obligation under Article 2(b). However, they did not claim an overpayment based on an amortization account referenced in Article 20(d).[2] The letter resulted in both parties compromising on a settlement. The parties executed

---

[1] The first four modifications are not in dispute.

[2] In their initial Complaint and Motion for Summary Judgment, Safeway claimed they still overpaid during the years of 2005 and 2008 because they mistakenly failed to setoff that amount against Article 20(d). (Pl. Mot. Summ. J., ECF No. 23, at 14). However, in filing their Response to Defendant's Motion for Summary Judgment, Safeway conceded the estoppel certificate settles any percentage rent claims prior to 2012 (Pl. Resp., ECF No., 28, at 28). In dispute is the parties' intent when signing the estoppel agreement and what effect this settlement letter has on claims for the years after 2012. In conceding, Safeway rephrased the recovery they are asking for. They seek recovery of: (1) the amount of mistakenly paid percentage rent for the calendar years 2012 to 2017; (2) recovery of amounts paid by Safeway under protest and a reservation of rights for the years 2018 and 2019; (3) percentage rent for 2020 and

an "estoppel certificate" on August 2, 2011, under which Safeway received an offset of $228,989.00 against percentage rent. The offsets were taken through the years 2009 to 2012 (Pl. Mot. Summ. J., ECF. No. 23, at 15: tbl. 1).

### The Years 2012–2017

In the five years following 2012, Safeway paid percentage rent to WY Plaza in the total of $670,872.94. Safeway did not deduct rent from an amortization account referenced in Article 20(d) during these years.

### Safeway's 2018 Letter

On November 7, 2018, Safeway's senior real estate manager sent a letter to WY Plaza seeking recovery of mistaken overpayments in the amount of $1,111,525.94. In the letter, Safeway claimed they inadvertently failed to deduct for the amortized balance of the addition costs in accordance with Article 20 of the lease from 2005 to 2017. Safeway says they discovered the overpayment while reviewing their occupancy costs disbursement program. Safeway has since determined that mistaken payments occurred because an internal Form RE-55 Real Estate Information Transmittal was not properly prepared in 2002. (Pl. Mot. Summ. J. ECF No. 25, at Hanavan Decl. ¶¶ 1–10).

On December 19, 2018 WY Plaza responded and denied Safeway's claims. WY Plaza asserted that the 2010 estoppel certificate had resolved Safeway's percentage rent claims moving forward. (Pl. Mot. Summ. J. ECF No. 25, at Ex. 15).

---

after in terms of a declaratory judgment that no percentage rent will be due until Safeway has offset the Addition Cost, plus accrued interest.

***Rent Under Protest for 2018 & 2019 and the Present Suit***

On May 1, 2019, Safeway advised WY Plaza they were paying percentage rent in the amount of $122,340.04 under protest with a reservation of claims, defenses, rights and remedies. About a month later, on July 10, 2019 Safeway filed suit against WY Plaza for the following causes of action: (1) breach of contract; (2) anticipatory breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) money had and received; (5) money paid by mistake; and (6) declaratory judgment. (Pl. Compl. ECF No. 1). On February 21, 2020, Safeway advised WY Plaza they were making a payment in the amount of $119,369.23 for 2019 percentage rent under protest with a reservation of claims, defenses, rights, and remedies.

***Current Motions Before the Court***

Both parties moved for summary judgment on the same day. Safeway moved for summary judgment in its favor on all claims: (1) breach of contract; (2) anticipatory breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) money had and received; (5) money paid by mistake; and (6) declaratory judgment. WY Plaza moved for summary judgment in its favor on Safeway's claims on the following grounds: (1) Wyoming's statute of limitations bar Safeway's contractual causes of action of breach of contract, anticipatory breach, and implied covenant of good faith and fair dealing; and (2) money had and received and money paid by mistake are untenable equitable claims. Additionally, in its response to Safeway's Motion for Summary Judgment, WY Plaza moved for summary judgment in its favor on Plaintiff's claims because issues of disputed fact exist relating to their affirmative

6

defenses of estoppel, accord and satisfaction, waiver, laches, and mitigation of damages. A hearing on the cross motions was held on September 30, 2020.

## RELEVANT LAW

As a federal court sitting in diversity, the substantive law of the forum state governs the underlying claims, including the applicable standard of proof. *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1195 (10th Cir. 2012). Accordingly, Wyoming law applies to the substantive claims in this case. Specifically, "we must ascertain and apply state law to reach the result the Wyoming Supreme Court would reach if faced with the same question. If no state cases exist on a point, we turn to other state court decisions, federal decisions, and the general weight and trend of authority." *Cunningham v. Jackson Hole Mountain Resort Corp.*, 673 Fed App'x 841, 844 (10th Cir. 2016) (internal quotations and citations omitted). Nevertheless, federal law controls the ultimate procedural question of whether granting summary judgment is appropriate. *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009).

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is material if it would affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The trial court decides which facts are material as a matter of law and "only disputes

over facts that might affect the outcomes of the suit under governing law will properly preclude the entry of summary judgment." *Id.*

The movant bears the initial burden to either affirmatively disprove an essential element of the non-movant's case, or to demonstrate the non-movant lacks evidence to support the claim at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). To meet this initial burden, the movant must support its motion with materials such as affidavits, depositions, answers to interrogatories, admissions, stipulations, or discovery requests. Fed. R. Civ. P. 56 (c)(1). The nonmovant "must respond with specific facts showing the existence of a genuine factual issue to be tried." *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980). To defeat a motion for summary judgment, the non-movant must show more than "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position . . . there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby,* 477 U.S. at 252.

When reviewing a motion for summary judgment, the court's role is not to weigh the evidence, but rather to assess the threshold consideration of whether a genuine issue of material fact exists. *Id.* at 249. All reasonable inferences must be resolved in the light most favorable to the non-moving party. *Id.* at 255. This inquiry is also guided by applicable evidentiary standards. *Id.*

Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party. *See Banner Bank v. First Am. Title Ins. Co*., 916 F.3d 1323 (10th Cir. 2019).

**RULING OF THE COURT**

Before the Court considers the merits of the Safeway's claims, the Court must first address the affirmative defenses raised by WY Plaza, because if the Defendants have a valid affirmative defense, the Court does not need to address the merits of Safeway's claims.

### A. Doctrine of Laches

The Court finds that WY Plaza's affirmative defense of laches applies. (Def. Answer ECF No. 8, at 6; Def. Resp. to Pl.'s Mot. Summ. J. ECF No. 27, at 14; Dispositive Mot. Hr'g 19:8, 25:22, 36:9, 39:8, 51:18, 53:8–20). A determination regarding the existence of laches is within the sound discretion of the trial court. *Windsor Energy Group, L.L.C v. Noble, Energy Inc*., 2014 WY 96, ¶ 23, 330 P.3d 285, 291–92 (Wyo. 2014). Laches is available in limited circumstances in actions at law, including breach of contract actions, governed by a statute of limitations. *Id.* at ¶ 22, 330 P.3d at 291. While the statute of limitations enforces arbitrary time limits, laches considers the conduct of the parties and their relative positions. *See Eblen v. Eblen*, 234 P.2d 434, 442–43 (Wyo. 1951).

"Laches is defined as such delay in enforcing ones rights that it works to the disadvantage of another." *Dorsett v. Moore*, 2003 WY 7, ¶ 9, 61 P.3d 1221, 1224 (Wyo. 2003). The defense of laches is based in equity and whether it applies in a given case depends upon the circumstances. *Hammond v. Hammond*, 14 P.3d 199, 201 (Wyo. 2000); *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 123, 226 P.3d 889, 929 (Wyo. 2010). Laches is comprised of two elements: (1) inexcusable delay in the assertion of a right; and (2) injury, prejudice, or disadvantage to the defendants or others. *Moncrief v. Sohio Petroleum Co*., 775 P.2d 1021, 1025 (Wyo. 1989). In assessing the elements,

9

"[s]everal conditions may combine to render a claim or demand stale in equity. If by the laches and delay of the complainant it has become doubtful whether adverse parties can command the evidence necessary to a fair presentation of the case on their part, or if it appears that they have been deprived of any such advantages they might have had if the claim had been seasonably insisted upon, or before it became antiquated, or if they be subjected to any hardship that might have been avoided by reasonably prompt proceedings, a court of equity will not interfere to give relief, but will remain passive; and this although the full time may not have elapsed which would be required to bar a remedy at law." *Eblen*, 234 P.2d at 442–43.

The undisputed facts of this case satisfy both elements.

### B. Inexcusable Delay in the Assertion of a Right

The first element of laches is a party's inexcusable delay in asserting a right. *See Moncrief*, 775 P.2d at 1025. WY Plaza asserts both Safeway's delay and justification for that delay are inexcusable. (Def. Resp. to Pl.'s Mot. Summ. J. ECF No. 27, at 14). The Court agrees.

In evaluating unreasonable delay by a party in asserting a right, the passage of time alone is not enough, rather "the Plaintiff must be chargeable with a lack of diligence in failing to proceed more promptly." *Cathcart v. Meyer*, 2004 WY 49, ¶ 13, 88 P.3d 1050, 1058 (Wyo. 2004). The Court looks to Safeway's "knowledge or ignorance of the facts constituting the cause of action, as well as his diligence in availing himself of the means of knowledge within his control." *Merrill v. Rocky Mountain Cattle Co.*, 181 P. 964, 974 (Wyo. 1918) (quoting *Patterson v. Hewitt*, 195 U.S. 309 (1904)). For the first element of laches to fail, Safeway must have "lacked knowledge of the facts or was without the means of discovering them." *Murphy v. Stevens*, 645 P.2d 82, 91 (Wyo. 1982) (quoting *Harnett v. Jones*, 629 P.2d 1357, 1364 (1981)). Additionally, laches cannot be imputed to a party justifiably ignorant of the facts creating his cause of action. *Harney v. Montgomery*, 213 P. 378, 384 (Wyo. 1923). The Court

finds Safeway was not justifiably ignorant of the facts creating this cause of action. There is no genuine issue of material fact that Safeway had the facts needed to exercise their rights in relation to this cause of action for nearly two decades.

### i.    The Delay

The initial inquiry in the first element of laches is when did Safeway have the right to exercise Article 20(d) of the lease? Neither Safeway nor WY Plaza dispute that "Article 20(d) of the lease allows Safeway to deduct from its annual percentage rent obligation any costs paid by Safeway, plus interest at the Industrial "A" rated bond rate (long-term) in effect at the time of the completion, until all of cost paid by Safeway and the interest have been fully recovered by Safeway." (Stipulation of Facts, ECF No. 31, at ¶ 4). Additionally, neither party disputes that Safeway constructed the addition on May 10, 2001. *Id.*  So, it follows the rights afforded to Safeway in Article 20(d) became ripe in 2001. However, Safeway did not attempt to exercise the rights afforded in Article 20(d) until November 7, 2018, over seventeen years later. (Pl. Mot. Summ. J. ECF No. 23, at Ex. 14). Courts in Wyoming have held laches applicable in cases with significantly shorter delays. *See, e.g.*, *See Moncrief,* 775 P.2d at 1026  (finding laches when Plaintiff waited seven years to assert rights); *Eblen*, 234 P.2d at 442 (finding laches when plaintiff waited six years to assert rights); *Merrill v. Rocky Mountain Cattle Co.*, 181 P. 964 (1918) (finding laches when plaintiff waited three years to assert rights).

### ii.   The Excuse

The next inquiry in the first element of laches is whether an excuse justifies the seventeen-year delay. Safeway claims they did not know of the right in Article 20(d) until 2018 because a paralegal improperly completed a "Form RE-55" on March 21, 2002. (Pl. Mot.

11

Summ. J. ECF No. 23, at Hanavan Decl. ¶ 9). When completing the form, the paralegal omitted reference to Section 20 of the lease. *Id.* As a result of the omission, Safeway argues "it could not reasonably be expected that the company's corporate accounting department which prepares the Percentage Rent statements, which are provided annually to the lessor, would know that the setoff against Percentage Rent should have been deducted." *Id.* at ¶10. In explaining the error, Safeway asserts the paralegal who completed the Form RE-55 "should have been aware that the accounting department . . . relies upon the information provided by the RE-55." *Id.* Further, Safeway has admitted to "routine" audits of its "percentage rent payments to ensure the correct amounts have been paid to our landlords." (Pl. Mot. Summ. J. ECF No. 23, at Ex. 9). Safeway's only explanation for why a routine audit never caught Safeway's right to deduct under Article 20(d) is that the audit conducted in 2010 was a "different type of audit" than in 2018, and the 2010 audit was done in reliance of the Form RE-55 (Dispositive Mot. Hr'g 12:4-21).

WY Plaza argues the Form FE-55 mistake does not justify the delay because Safeway has not given an explanation for the internal mistake. (Def. Resp. to Pl.'s Mot. Summ. J. ECF No. 27, at 14). Additionally, WY Plaza argues that there are factual issues related to the date the Form RE-55 was completed in relation to the fifth modification. Safeway also argues the FE-55 error does not excuse why Safeway didn't exercise their rights under Article 20(d) during the 2010 settlement. *Id.* at 9–16.

In response, Safeway argues the Form FE-55 mistake justifies the delay because the 2010 estoppel agreement only addressed Article 2 of the lease. (Pl. Mot. Summ. J. ECF. No. 23, at 7). Safeway asserts their review in 2010 only focused on Article 2 and "mistakenly failed

to recognize that the Amortization account greatly exceeded the percentage rent payments otherwise due." *Id.* (citing Miller Dec., at ¶ 17).  Additionally, Safeway argues that an error in using the wrong calculation for minimum rent is an entirely different type of error than failing to recognize the amortization account balance. They point out that minimum rent is found in Article 2 of the lease, while the amortization account is found in Section 20*. Id.*

The Court finds that based on the undisputed facts, no reasonable juror could find justification for Safeway's delay. The undisputed facts indicate that Safeway has known or had reason to know of their rights under Article 20(d) since 2001. The Form FE-55 error explains why Safeway's *accounting department* did not properly deduct rent for seventeen years. However, Safeway has not explained why Safeway's real estate and legal departments did not assert their rights under Article 20(d) prior to 2018 despite: (1) possessing the lease for nearly four decades; (2) amending the lease at least nine times since 2001; (3) engaging in an eighteen month long legal dispute over the lease in 2010; and (4) signing a settlement agreement over the lease in 2010.

A chronological look at Safeway's involvement with the lease is helpful. First, Safeway, through its predecessor, has been in possession of the lease since it was initially signed in January 28, 1980. Importantly, the Article in dispute, Article 20, was included in the 1980 lease. (Pl. Mot. Sum. J. ECF No. 23, at Ex.1). Since the creation of the lease, Safeway and WY Plaza have modified the lease numerous times. As part of those modifications under the lease, Safeway has the right to exercise five-year options to extend the lease. After 1980 and prior to constructing the addition, Safeway modified or amended the 1980 lease in

agreements dated March 17, 1980, July 2, 1980, August 20, 1980, May 5, 1981, August 31, 1981, and August 1, 2000. (Def. Mot. Summ. J., ECF No. 25, at Ex. 7).

After constructing the addition in 2001, the "fifth modification" was signed on March 20, 2002. This modification was drafted in accordance with Article 20(g) from the 1980 lease. *Id.* The lease was modified again on December 4, 2006, and May 8, 2009. (Def. Mot. Summ. J., ECF No. 25, at Ex. 7).

Next, on February 12, 2010 Safeway initiated a dispute with WY Plaza over percentage rent overpayments. This dispute lasted over a year, ending in a settlement agreement signed on August 2, 2011 (Pl. Mot. Summ. J, ECF No. 23, at Ex. 15). In the settlement agreement estoppel certificate, Safeway stated "to Safeway's knowledge, there are no defaults under the Lease by the Lessor. To Safeway's knowledge, there are no current default-related credits." (Def. Mot. Summ. J., ECF No. 25, at Ex. 7). In signing the legally binding estoppel agreement pertaining to the exact lease in dispute, it can only be inferred that Safeway would have read the lease in full, which included Article 20(d). Wyoming law is clear. "One who signs a paper, without reading it, if he is able to read and understand is guilty of negligence in failing to inform himself of the nature that he cannot be relieved from the obligation contained in the paper thus signed." *Mendoza v. Gonzales*, 2009 WY 50, ¶ 10, 204 P.3d 995, 999 (Wyo. 2009). This rule is especially relevant when both parties to a commercial contract are "sophisticated business people . . . [who] have a duty to read the contract carefully." *Herling v. Wyo. Mach. Co.*, 2013 WY 82, ¶ 39, 304 P.3d 951, 961 (Wyo. 2013) (quoting *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 571 (4th Cir. 1998)).  Safeway, a sophisticated business,

would have, or should have, read the lease in full, especially the portions relevant to rent payments that were in dispute in during the 2010 settlement agreement.

After the settlement agreement, on February 11, 2015, Safeway notified WY Plaza that Safeway was exercising its fourth option to extend the lease for five years, through February 17, 2021 (Pl. Mot. Summ. J. ECF No. 23, at Ex. 13). No facts indicate Article 20(d) was ever removed from the lease throughout the modifications or options.

These dates show at least nine times Safeway would have, or should have, looked at and read the original 1980 lease. The lease has always undisputedly shown Safeway had the right to create and deduct from the amortization account after building an addition. (Stipulation of Facts, ECF No. 31, at ¶ 4). And after the addition specifically, these dates reference at least five times, including a yearlong legal dispute and legally binding settlement agreement in while Safeway would have, or should have, read the lease and asserted their rights under Article 20(d). The fact that Safeway, a sophisticated corporation involved in a commercial contract, did not read the lease in full for at least seventeen years despite exercising options to extend it, modifying it, and engaging in a legal dispute and settlement agreement over it is inexcusable.

At best, the Form RE-55 mistake may explain, not excuse, the accounting department's overpayments. The lack of proper audits may excuse the delay in a case in while the party had not engaged with the lease for decades. That is not the case here where Safeway has actively extended the lease for decades at their own option. The Court finds neither the paralegal's 2002 mistake or the insufficient 2010 audit excuse Safeway's legal and real estate departments'

failure to exercise their rights for seventeen years. No reasonable juror could find otherwise and the first element to laches is met.

### C. *Injury, Prejudice, and Disadvantage to the Defendants*

The second element of laches is injury, prejudice, or disadvantage to the defendants or others as a result of the inexcusable delay. *See Moncrief*, 775 P.2d at 1025.  WY plaza asserts three reasons they would be prejudiced in the event Safeway was successful in bringing this suit: (1) Safeway cannot produce Ms. Rosemary Westlund who made the Form FE-55 mistake, on information and belief she is deceased; (2) memories have faded, witnesses are unavailable, and WY Plaza's defense in this matter is disadvantaged; (3) WY Plaza has relied on fifteen years of rent payments in its business dealings, tax burden, and operations. (Def. Res. to Pl. Mot. Summ. J. ECF No. 27, at 14). In sum, WY Plaza asserts they are at a disadvantage for multiple reasons because of Safeway's delay.

In response, Safeway claims WY Plaza's bare assertions are not enough. (Disp. Mot. Hr'g 42:19–2). In order to win summary judgment, evidence must be based on more than speculation, conjecture, or surmise. *Cypert v. Independent Sch. Dist. No. I-050 of Osage County*, 661 F.3d 477, 481 (10th Cir. 2011). Additionally, "relying on conclusory statements or mere opinion will not satisfy that burden, nor will relying solely upon allegations and pleadings." *See Boehm v. Cody Cntry. Chamber of Commerce*, 748 P.2d 704, 710 (Wyo. 1987). WY Plaza does not meet the necessary burden necessary for summary judgment for their first and third justifications for why they would be prejudiced. The bare assertion that they relied on the payments in business dealings, tax burdens, and operations is not satisfactory. (Def. Res. to Pl. Mot. Summ. J. ECF No. 27, at 15). Neither is conclusory statements such as the

"information and belief" that Ms. Westlund has passed away. *Id.* However, notwithstanding the fact that Defendant's failed to meet their burden on these arguments, the Court finds the undisputed facts demonstrate enough prejudice against WY Plaza to justify a finding of laches.

There are two reasons the Court finds WY plaza at a disadvantage such that no rational trier of fact could resolve the issue the other way: (1) the three situations surrounding Safeway's delay happened in 2002 and 2010, making reliable witnesses and evidence difficult to procure; (2) the undisputed lease language and numbers indicate the delay financially injures WY Plaza.

### i.   *Prejudice in Procuring Witnesses and Evidence due to the Delay*

The undisputed facts show three circumstances relevant to the Article 20(d) dispute. The Court finds that due to the delay, WY Plaza would be disadvantaged in procuring witnesses and evidence surrounding those situations.

> "The rule as to laches is peculiarly applicable where the difficulty of doing entire justice arises through the death of a principal participant in the transactions complained of, or of the witness or witnesses, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible." *Mackall v. Casilear*, 137 U.S. 556, 556. (1890).

Further, "if the lapse of time has caused doubt as to the ascertainment of the facts as where witnesses have died or papers have been lost, or where the time elapsed is so great that witnesses may have forgotten the facts, the chance that the respondent will be dealt with unjustly may be sufficiently great to prevent the granting of restitution." RESTATEMENT OF THE LAW OF RESTITUTION, §148 d.

The first circumstance relevant to the dispute about Article 20(d) is the execution of the fifth modification. It is undisputed that the fifth modification memorialized Safeway's construction. However, the fifth modification was initially drafted between Safeway and Las Vegas Retail, LLC (Stipulation of Facts, ECF No. 31, at ¶ 9). Because WY Plaza purchased the shopping center just months after Safeway constructed the addition and before Safeway and Las Vegas Retail finished the fifth modification, Las Vegas Retail left its completion up to WY Plaza.  There are factual issues over the intent of the parties when they drafted the fifth modification in accordance with Article 20(g). However, WY Plaza has indicated that the parties involved with the acquisition cannot recall specific facts (ECF No. 23, Answer to Pl's. Second Set of Interrogatories, at ¶ 17). Additionally, the WY Plaza stated they "do not specifically recall the discussion surrounding percentage rent or how percentage rent might be affected by the Safeway addition around the time of the acquisition. Discussions may have occurred but may not be recalled given the number of years it has been since the acquisition occurred." *Id.* at ¶ 20.

The second circumstance relevant to the Article 20(d) dispute is Safeway paralegal Ms. Rosemary Westlund's mistake when completing the Form FE-55. Safeway claims this mistake is the source and sole cause of every overpayment. However, Safeway has not explained *why* the error occurred. Safeway has only provided a third party proffering that Ms. Rosemary Westlund "should have been aware that the accounting department relied upon the Form RE-55." (Pl. Mot. Summ. ECF No. 23, Decl. of Thomas Hanavan). Safeway did not produce any affidavits from Ms. Rosemary Westlund herself explaining *how* or *why* she made the error. WY Plaza argues this may not have been a mistake considering Ms. Westlund completed it

just a day after the fifth modification. Regardless, the form was completed over eighteen years ago. No reasonable juror could conclude that eighteen years is a reasonable amount of time to assure that the witness recollections are reliable.

The third relevant circumstance is why Safeway failed to consider Article 20(d) when signing the 2010 estoppel agreement. Safeway has noted that the employees involved in the settlement agreement with WY Plaza in 2010 are no longer employees of Safeway. (Pls. Answer to Defs. Interrogatory at ¶13). Significantly, Safeway's in-house lawyer at that time, Ms. Linda MacDonald, who agreed to the settlement on behalf of Safeway passed away in 2017. (Pls. Answer to Defs. Interrogatory No. 13). "The rule as to laches is peculiarly applicable where the difficulty of doing entire justice arises through the death of a principal participant in the transactions complained of." *Mackall*, 137 U.S at 556.  Even if other employees involved in the settlement agreement could be procured for trial, the estoppel certificate was signed over ten years ago, making memories for employees who have moved on faded and unreliable.

Facts surrounding all three of these events could be crucial in determining both Safeway's claims and WY Plaza's affirmative defenses. Based on the undisputed facts alone, WY Plaza is prejudiced in its ability to gather reliable testimony and evidence surrounding the 2002 fifth modification, the 2002 Form FE-55 mistake, and the 2010 settlement.

### ii. *Financial Prejudice due to the Delay*

In addition to the passage of time, a change in the value of property is a material consideration in application of the doctrine of laches. *See Moncrief v. Sohio Petroleum Co.*, 775 P.2d 1021, 1026 (1989). The plain, undisputed language of the lease reads:

> "Interest, at the Industrial "A" rated bond rate (long-term) in effect at the time of completion of said addition, shall accrue on the balance of said account for the previous calendar year on January 1 of each year. Interest shall be prorated from the date of completion to December 31 of the year of completion of said addition. After accrual of said interest, lessee shall deduct from said account an amount equal to the amount to be deducted, under the provisions of this paragraph from percentage rent."

More specifically, the lease provides that interest on the completion accrues on "the balance of the amortization account for the previous calendar year on January 1 of each year." A plain reading of that provision indicates if Safeway had exercised their right to create an amortization account and deducted rent credit from the account, the interest would accrue less each year. Essentially, the undisputed terms of the lease read that interest is calculated on the balance of the amortization account at the end of each year. So, the longer Safeway does not deduct from the amortization account, the more interest WY Plaza accumulates.

Further, according to Safeway's expert witness, WY Plaza currently owes Safeway $6,080,097.11. (Pl's. Designation of Expert Witness, ECF No. 15). Of that amount, $3,502,380.11 is interest. The expert calculated interest from May 1, 2001 to January 13, 2020, a total of 6,831 days. The expert calculated the daily per-diem increase by multiplying the starting amount (the cost of the expansion at $2,577, 717.00) by the daily interest (A rated bond rate of 7.26% divided by 365 which equals 0.01989%) to get a daily increase of $512 in interest. Thus, the expert multiplied $512 by 6,831 days to get the total accumulated interest balance of $3,502,380.11.

Safeway argues that WY Plaza is not financially harmed because they were never entitled to rent payments in the first place, and it is a windfall for WY Plaza to have received them. But, based on the lease, had Safeway exercised their right to create and deduct from the

amortization account sooner, WY Plaza's per diem interest rate would decrease as the account decreased each year. For example, by the time the amortization account reached, for simplicity, $1,000,000 on January 1st of a year, the per-diem interest rate, would be roughly $198 dollars a day, as opposed to $512 dollars a day ($1,000,000 multiplied by 0.01989%). Applying the elements of laches to the present case, it is plain to see how Safeway benefits financially from the delay, while WY Plaza suffers. A "significant increase in value during the period of delay, where the claimant might have asserted the right before such change, is ordinarily fatal to the plaintiff's case." *Moncrief*, 775 P.2d at 1026.

### D. Conclusion

Safeway could have exercised their undisputed rights under Article 20(d) for over seventeen years prior to bringing this suit. Safeway has provided no excusable justification for the delay when they have had access to that provision since 1980, had reason to exercise that provision since 2001, and actively modified the lease numerous times over the last two decades. Significant circumstances surrounding this suit occurred eighteen years ago. At least one witness essential to the claim has passed away. A plain reading of the lease shows Safeway's dormant approach financially benefits them while it damages WY Plaza.  The delay renders Safeway's claim stale and deprives WY Plaza a chance to gather the necessary evidence to present their case.

Accordingly, the Court finds that the doctrine of laches bars Safeway's claims for breach of contract, anticipatory breach of contract, breach of covenant of good faith and fair dealing, money had and received, money paid by mistake, and declaratory judgment.

Safeway's Motion for Summary Judgment is DENIED. WY Plaza's Motion for Summary Judgment is GRANTED.

### FURTHER RULING OF THE COURT

Even if Safeway's claims were not barred by laches, the Court finds that WY Plaza did not breach the lease or the covenant of good faith and fair dealing. Further, the Court finds the claims for "money had and received" and "money paid by mistake" are not viable in this case. Finally, the laches finding precludes the need for the Court to address declaratory judgment and anticipatory breach of contract. *See United States v. Wald*, 216 F.3d 1222, 1229 n.3 (10th Cir. 2000) (declining to address alternative argument when party entitled to judgment on primary argument).

Both parties have asked the Court to find in their favor on all causes of action in this matter. Each of the Motions will be addressed separately. Because Safeway bears the burden of proof on all claims at trial, WY Plaza's Motion for Summary Judgment will be considered first, as the they can either disprove an essential element of a claim or demonstrate a lack of evidence for that claim. If WY Plaza's Motion for Summary Judgment is granted on an issue, the Court need not address Safeway's motion on that same issue since the WY Plaza would prevail as a matter of law, even with the evidence viewed in the light most favorable to Safeway, and there is no genuine dispute as to any material fact which would require the Court to revisit the issue.

If WY Plaza's Motion for Summary Judgment fails on an issue, then a genuine issue of material fact might exist. However, Safeway could still be entitled to summary judgment as a

matter of law, so the Court will then address Safeway's Motion for Summary Judgment on the same issue.

### A. Breach of Contract

#### i. Statute of Limitations

WY Plaza first argues that the statute of limitations bars Safeway's contractual claims. As this affirmative defense would be dispositive, the Court will consider this issue first.

Under Wyoming Law, actions for recovery on a contract must be brought within ten years after the cause of action accrues. Wyo. Stat. Ann. § 1-3-105 (2016). In contracts, an action usually accrues at the time of a breach of a contractual agreement, rather than the time that actual damages are sustained as a result of the breach. *See Richardson Associates v. Lincoln-Devore*, 806 P.2d 790 (Wyo. 1991). Thus, the issue in this statute of limitations claim turns on when Safeway's cause of action accrued. Wyoming is a discovery state, meaning the statute of limitations is triggered when a plaintiff knows or has reason to know of existence of a cause of action. *See, Amoco Prod. Co. v. EM Nominee Pshp. Co*., 2 P.3d 534 (Wyo. 2000).

Generally, the application of the discovery rule is "a difficult candidate for summary judgment." *Robert L. Kroenlein Trust v. Kirchlefer, 2015 WY 127*, ¶ 31, 357 P.3d 1118, 1128 (Wyo. 2015). The application of the discovery rule to a statute of limitations often requires asking a mixed question of law and fact; consequently, "the entry of summary judgment on the issue of when a statute of limitations commences to run is typically inappropriate." *See, e.g., Cathcart v. Meyer*, 2004 WY 49, ¶ 30, 88 P.3d 1050, 1062–63 (Wyo. 2004); *Murphy v. Housel & Housel*, 955 P.2d 880, 883 (Wyo. 1998). Thus, the question of when an action accrued can only be resolved as a matter of law if uncontroverted facts establish when a

reasonable person should have been placed on notice of his claim. *Hiltz v. Robert W. Horn, P.C.*, 910 P.2d 566, 569 (Wyo. 1996).

WY Plaza argues that if it did breach the lease, it would have been in 2006. Since WY Plaza did not create and credit of an amortization account when Safeway first paid percentage rent in 2006 and would have been in breach since. Because the breach was over ten years ago, WY Plaza asserts Safeway's claims of breach of contract, anticipatory breach of contract, and connected breach of covenant of good faith, must be barred by the statute of limitations.

In response, Safeway concedes their claims for Percentage Rent for the years 2005 to 2008 were settled by the 2010 Estoppel Certificate. (Pl. Mot. Summ. J., ECF No. 23, at 14). Thus, the remaining claims are for the years 2012 and on. Safeway argues these are all clearly within the 10-year statute of limitations period. Further, Safeway argues that the ten-year statute of limitations to the initial breach is not applicable because the lease is an installment contract. *See* INSTALLMENT CONTRACT, Black's Law Dictionary (11th ed. 2019) ("A contract requiring or authorizing the delivery of goods in separate lots, or payments in separate increments, to be separately accepted."); *Installment Contract*, Legal Information Institute Encyclopedia, CORNELL LAW SCHOOL, https://www.law.cornell.edu/wex/installment_contract (last visited Oct. 20, 2020) ("An installment contract is a single contract that is completed by a series of performances–such as payments–rather than being performed all at one time.").

In *Moncrief v. Williston Basin Interstate Pipeline Co*, 880 F. Supp. 1495, 1505–1506 (D. Wyo. 1995) the Court found the failure to make a monthly payment under a lease constituted a new breach each month for statute of limitations purposes. The Court held that in an installment contract, a cause of action accrues, and the statute of limitations begins to run

on each installment that a party fails to render performance in accordance with the terms of the contract. *Id.*

Here, the Court finds the lease is an installment contract. Article 2 of the Lease provides for the payment of a "fixed minimum rent" due each month. Additionally, the calculation of "percentage rent" is based on each calendar year of the lease term and is due annually. Safeway has always paid rent both monthly and annually. Thus, the cause of action accrues, and the statute of limitations runs from the date of breach for each rent payment. For these reasons, the Court holds that the statute of limitations with respect to the post–2012 claims has not run.[3]

### ii.    *Breach of Contract*

Safeway alleges WY Plaza breached the lease because Safeway's rights under Article 20(d) are undisputed. WY Plaza argues Safeway has not proven they breached a specific provision in the lease.

The purpose of interpreting any contract is to determine the true intent of the parties. *State v. Pennzoil Co*., 752 P.2d 975, 978 (Wyo. 1988). If the language of the contract is plain and unequivocal, that language is controlling. *Dewey v. Dewey*, 2001 WY 107, ¶ 20, 33 P.3d 1143, 1148 (Wyo. 2001). The plain meaning is the meaning which the language would convey to a reasonable person at the time and place of its use. *Dickson v. Thomas*, 2009 WY 10, ¶ 7, 199 P.3d 1090, 1094 (Wyo. 2009). The court secures the intent of an unambiguous contract as the words are expressed within the four corners of the document. *Wolter*, 979 P.2d at 951. When the terms of the agreement are unambiguous, the interpretation is a question of law, and

---

[3] Since Plaintiff concedes that the Estoppel Certificate bars claims for the years prior to 2010, the Court does not need to address those years.

summary judgment is appropriate because there is no genuine issue of material fact. *Examination Management Services, Inc. v. Kirschbaum*, 927 P.2d 686, 689 (Wyo. 1996).

A breach of contract is a failure without legal excuse to perform any promise which forms a whole or part of a contract. *Sagebrush Dev., Inc. v. Moehrke*, 604 P.2d 198, 201 (Wyo. 1979).  Reviewing the question of breach necessarily requires reference to the four corners of the lease to determine if its terms have been violated. *See generally Scherer Const., LLC v. Hedquist Const., Inc*., 2001 WY 23, ¶ 29, 18 P.3d 645, 656 (Wyo. 2001). The provision in dispute, Article 20(d), reads:

> If lessee constructs said addition, lessee may deduct from percentage rent, if any, otherwise payable under the provisions of this lease for any calendar year after all other offsets and deductions against percentage rent provided in this lease are first taken, an amount equal to said percentage rent until such time as the balance in the amortization account, as hereafter created, equals zero: An amortization account shall be created to record the operation of the provisions of this paragraph. The original balance of said account shall be the cost of said addition. Interest, at the Industrial "A" rated bond rate (long-term) in effect at the time of completion of said addition, shall accrue on the balance of said account for the previous calendar year on January 1 of each year. Interest shall be prorated from the date of completion to December 31 of the year of completion of said addition. After accrual of said interest, lessee shall deduct from said account an amount equal to the amount to be deducted, under the provisions of this paragraph, from percentage rent.

WY Plaza argues that the plain reading of this section *allows*- but does not *mandate*- percentage rent payments "may" be withheld by lessee and used to offset the balance of the amortization account. In another explanation, WY Plaza asserts Safeway had the choice to either pay percentage rent *or* claim an offset. Since Safeway paid percentage rent from 2005 to 2019, they chose the former. Further, WY Plaza points to an absence of any provision in the

lease *requiring* either WY Plaza or Safeway to deduct and offset percentage rent otherwise due payable or imposing a duty on WY Plaza to reject overpaid percentage rent payments. Lastly, WY Plaza argues that all rights relative to the decision to deduct such payments belong to Safeway.

In response, Safeway argues a clear reading of the contract in full shows Safeway was never entitled to a payment for any amount of Percentage Rent after the addition was constructed. Safeway asserts the lease expressly entitles Safeway to deduct the cost of the addition to the leased premises against percentage rent. Additionally, Safeway argues the lease should be interpreted to read that any amounts owed for percentage rent should have been applied to reduce the amortization account to zero before any amounts of percentage rent were paid to WY Plaza.

The Court finds no dispute of fact that Article 20(d) of the lease permitted Safeway to deduct the cost of the addition from percentage rent. The parties do not dispute that Safeway paid percentage rent without an offset from 2005 to 2017. Finally, the parties also do not dispute that Safeway did not create the amortization account until November 2018. (Pl. Ans. To Int. No. 3 & 10 ("Safeway did not prepare or maintain accounting document in which it made journal entries ... prior to November 2018.")). However, based on a plain reading of the Lease, the Court does not find WY Plaza in breach of any a provision in the lease. The rights described in Article 20(d) can only be exercised by Safeway, not WY Plaza. When a contract is silent on a particular matter that easily could have been drafted into it, a court should refrain from supplying the missing language under the pretext of contact interpretation. *Mendoza v. State*, 368 P.3d 886, 895 (Wyo. 2016) ("Courts are not at liberty to rescue parties from the

27

consequences of a poorly made bargain or a poorly drafted agreement by rewriting a contract under the guise of constructing it."). By the express and unambiguous terms of the lease, no specific provision indebted WY Plaza an affirmative duty to deduct rent. The Court also cannot find any language in the lease that obligated WY Plaza to create the amortization account, deduct payments, or reject rent payments that were not offset. Accordingly, WY Plaza did not breach the lease.

### B. Covenant of Good Faith and Fair Dealing

Safeway's second claim alleges that WY Plaza breached the covenant of good faith and fair dealing by accepting rent payments. WY Plaza argues that they did not breach the covenant of good faith and fair dealing because they were under no affirmative duty to act.

Every contract imposes the duty of good faith and fair dealing upon the parties in their performance in the contract. *Scherer Const., LLC v. Hedquist Const., Inc*., 18 P.3d 645, 652–53 (Wyo. 2001). The implied covenant of good faith and fair dealing is a separate and distinct claim from a breach of contract claim, and the two claims are not mutually dependent. *Cathcart v. State Farm Mut. Auto. Ins. Co*., 2005 WY 154, ¶ 25, 123 P.3d 579, 589 (Wyo. 2005). Additionally, a party may breach the implied covenant of good faith and fair dealing even if it did not breach the express terms of the contract. *City of Gillette v. Hladky Constr., Inc*., 196 P.3d 184, 199 (Wyo. 2008).

> The implied covenant of good faith and fair dealing requires that neither party commit an act that would injure the rights of the other party to receive the benefit of their agreement. . . Compliance with the obligation to perform a contract in good faith requires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party. . . A breach of the covenant of good faith and fair dealing occurs when a party interferes or fails to cooperate in the other party's

28

> performance. . . The purpose, intentions, and expectations of the
> parties should be determined by considering the contract
> language and the course of dealings between and conduct of the
> parties. . . The covenant of good faith and fair dealing may not,
> however, be construed to establish new, independent rights or
> duties not agreed upon by the parties . . . In other words, the
> concept of good faith and fair dealing is not a limitless one. The
> implied obligation must arise from the language used or it must
> be indispensable to effectuate the intention of the parties. . .. In
> the absence of evidence of self-dealing or breach of community
> standards of decency, fairness or reasonableness, the exercise of
> contractual rights alone will not be considered a breach of the
> covenant. *Scherer Const,* 2001 WY at ¶ 19, 18 P.3d at 653–54
> (internal citations and quotations omitted).

Although many claims for breach of good faith involve questions of fact making summary judgment inappropriate, summary judgment may be appropriate where, under the facts in the record, the party's actions were in conformity with the clear language of the contract. *Scherer Constr., LLC v. Hedquist Constr., Inc*., 2001 WY at ¶ 24, 18 P.3d at 654.

Safeway argues the lease has an implied covenant of good faith that would implicitly obligate WY Plaza to repay percentage rents. Further Safeway argues because the payments for the calendar years 2018 and 2019 were made under protest and reservation, WY Plaza is currently breaching the duty of good faith and fair dealing.

WY Plaza argues they did not breach this duty because no facts indicate they misled Safeway or acted in bad faith by accepting the rent payments. Further WY Plaza argues that the offset was a unilateral decision to be made by Safeway only, and "the covenant of good faith and fair dealing may not, however, be construed to establish new, independent rights or duties not agreed upon by the parties." *Scherer Const*., 2001 WY at ¶ 25, 18 P.3d at 653. Essentially, WY Plaza argues their actions were in conformity with the plain language of the contract.

Under the plain language of the contract, the Court finds WY Plaza was in conformity with their obligations. Safeway has not offered facts that indicate WY Plaza interfered with Safeway's right to create or deduct from the amortization account. Nor has Safeway offered facts that WY Plaza misled Safeway into paying rent. Additionally, WY Plaza had no duty under the lease to create the amortization account or deduct from it. The Court will not apply the doctrine of good faith and fair dealing to imply a duty that was not contracted between two sophisticated parties. Thus, WY Plaza did not breach the covenant of good faith and fair dealing.[4]

In sum, even if laches did not bar this suit, the Court finds WY Plaza did not breach the contract or the covenant of good faith and fair dealing.

### C. *Money Had and Received*

Safeway's fourth claim for relief is for "money had and received." WY Plaza argues for summary judgment in their favor because "money had and received" is not a legal cause of action when a valid contract exists.

Safeway relies on *Landeis v. Nelson*, 808 P.2d 216, 217 (Wyo. 1991) to support its claim for "money had and received." In this case, the parties phrased the issue under a claim of "money had and received," however, the Court analyzed the claim under the theory of unjust enrichment. *Id.* at 218; *see also First Nat'l Bank v. Fay*, 341 P.2d 79 (Wyo. X) (analyzing "money had and received" as unjust enrichment); *Anderson v. Bell,* 251 P.2d 572, 580 (Wyo. 1952) ("the gist of the action for money had and received is as to whether or not the party receiving the money has been unjustly enriched").

---

[4] To the extent WY Plaza failed to cooperate in 2018 and 2019, the affirmative defense of laches precludes analysis.

Unjust enrichment is "the failure to make restitution of benefits received under circumstances that give rise to a legal or equitable obligation." *See Rocky Mountain Turbines, Inc. v. 660 Syndicate, Inc*., 623 P.2d 758, 763 (Wyo. 1981) (quoting 66 AM.JUR.2D RESTITUTION AND IMPLIED CONTRACTS § 3). The Wyoming Supreme Court has held "[r]ecovery in such case is based on a promise implied by law or quasi contract and on the equitable principle that one who has been unjustly enriched at the expense of another is required to make restitution." *Anderson v. Bell,* 251 P.2d 572, 577 (Wyo. 1952).

Under Wyoming law, quasi contractual claims, including unjust enrichment, are not viable when an express contract exists between the parties. *See Hunter v. Reece*, 2011 WY 97, ¶ 28, 253 P.3d 497, 504 (Wyo. 2011); *Sowerwine v. Keith*, 997 P.2d 1018, 1021 (Wyo. 2000) (citing 66 AM.JUR.2D RESTITUTION AND IMPLIED CONTRACTS § 6 (1973)); *see also Schlinger v. McGee,* 2012 WY 7, ¶ 13, 208 P.3d 1317, 1322 (Wyo. 2009) ("Unjust enrichment is an equitable remedy. As such it cannot exist where there is an express contract governing the relationship between the parties.").

To understand the relationship between unjust enrichment and express contracts, it is useful to further analyze the *Landeis* case. Before the *Landeis* Court applied unjust enrichment, it found a "quasi contract" existed between the parties. In his concurrence, Justice Thomas disagreed with the application of unjust enrichment because he found a valid contract existed between the parties, not a quasi-contract. Thus, Justice Thomas argued the Court should have found a breach of contract instead of applying unjust enrichment:

> The trial court simply decided a straightforward breach of an express contract case. The decision was correct, and it should be affirmed without any reliance upon unjust enrichment. The result of the majority opinion seems to suggest that one cannot recover

damages for breach of contract, but instead must invoke a quasi-
contract theory. The law justifies recovery of damages for breach
of contract, and that is what the district court awarded. *Id.* at 219
(J. Thomas concurring).

Here, there is no dispute of fact that a valid, enforceable lease exists between WY Plaza

and Safeway. The Court also finds "money had and received" is a claim of unjust enrichment.

Unjust enrichment is an equitable remedy not available to contract disputes. Because a valid

contract exists between Safeway and WY Plaza, "money had and received" or unjust

enrichment is not an available remedy.

### D. *Money Paid by Mistake*

Safeway's fifth claim is for "money paid by mistake." WY Plaza argues Wyoming has

not recognized this cause of action. And if they have, it is in the form of restitution, which is a

form of equitable relief that can only be sought if there is no express contract. *See Hunter v.*

*Reece*, 2011 WY 97, ¶ 28, 253 P.3d 497, 504 (Wyo. 2011).

Safeway relies on *Messersmith v. G.T. Murray & Co.*, 667 P.2d 655 (Wyo. 1983) to

support its claim for "money paid by mistake." In *Messersmith*, plaintiff Frances Messersmith

contacted G.T. Murray and Company to find out how much she could sell her stocks in Western

Preferred for. The stockbroker, James King, looked up the Western Preferred stock and

informed Ms. Messersmith it was selling for $46 per share. Ms. Messersmith subsequently

sold her shares and received a check from G.T. Murray based on the $46 per share rate.

About two months later, G.T. Murray's parent company called James King and

informed him that there was an error in the price of the Western Preferred Stock. The stock

was actually only worth about 1/5 of what had been reported. After learning of the error, James

King contacted the Messersmith's to recover the overpayment. The trial court found in favor

of G.T. Murray. It determined there was a mutual mistake between Mr. King and Ms. Messersmith, and thus ordered Ms. Messersmith to give the overpayment back to G.T. Murray. The Court held "money paid under a mistake of fact, which would not otherwise have been paid, may be recovered unless the payee has changed his position to the extent that it would be unjust to require a refund." *Messersmith* 667 P.2d at 655 (citing *Akerson v. Gupta*, 458 F. Supp. 189, XXX (E.D. Mo. 1978)). *Messersmith* also held the burden shifts to the payee to show how they have changed their position such that demanding a refund would be "both unfair and damaging to the payee." *Id.* The Messersmith's appealed. The relevant issue on appeal was whether the trial court erred in its determination that a mutual mistake of fact occurred. The Court affirmed there was a mutual mistake between the parties as neither Ms. Messersmith nor Mr. King knew of the true value of the stock and they both were mistaken.

The distinction between Messersmith and the dispute in front of the Court is the finding of the mutual mistake. Under Wyoming law, when there is a mutual mistake, there is no assent of the parties. *Shrum v. Zeltwanger*, 559 P.2d 1384, 1387 (Wyo. 1977). Upon finding a mutual mistake, a Court may then reform or cancel the contract. *Id.* at 1386. Only after a contract is voided may the Court apply equitable relief.[5] Here, unlike *Messersmith*, there is a valid contract. No facts indicate a mutual mistake occurred between Safeway and WY Plaza which would void the contract. Thus, the Court cannot apply equitable remedies.

---

[5] To any dispute that the Court in Messersmith does proffer the distinction between mutual and unilateral mistakes unnecessary, they do so only with respect to the mistaken sale of securities, "however, most courts have not found it necessary to distinguish between mutual and unilateral mistakes *with respect to mistaken sale of securities*. The courts have proceeded upon the principle that money paid under a mistake of fact, which would not otherwise have been paid, may be recovered unless the payee has changed his position to the extent that it would be unjust to require a refund. So long as the parties can be returned to the status quo, courts should strive to achieve such a result. However, if the payees suffer damage as a result of a mistake *made by the broker, recovery by the broker* may be barred to the extent of the damage." *Messersmith*, 667 P.2d at 657 (emphasis added) (internal quotations omitted).

Additionally, even if this situation was analogous to *Messersmith*, the Court equated a claim of money paid by mistake to a claim of restitution. The Wyoming Supreme Court precedent is clear that equitable relief, such as restitution, is not available where a valid contract exists. *See Wagner v. Reuter*, 2009 WY 75, ¶ 13, 208 P.3d 1317, 1322 (Wyo. 2009); *Sowerwine v. Keith*, 997 P.2d 1018, 1021 (Wyo. 2000); *Three Way, Inc. v. Burton Enters.*, 2008 WY 18, ¶ 22, 177 P.3d 219, 226 (Wyo. 2008). Based on the Wyoming Supreme Court precedent following *Messersmith* and the narrow issue in it, the Court finds that *Messersmith*'s holding only applied to an invalid contract to the sale of stocks and securities. As Wyoming law applies to the substantive claims in this case, "we must ascertain and apply state law to reach the result the Wyoming Supreme Court would reach if faced with the same question. If no state cases exist on a point, we turn to other state court decisions, federal decisions, and the general weight and trend of authority." *Cunningham v. Jackson Hole Mountain Resort Corp.*, 673 Fed App'x 841, 844 (10th Cir. 2016) (internal quotations and citations omitted).

First, each of the cases cited in Messersmith relate exclusively to the sale of stocks and involve disputes between stockbrokers and stockholders. *See Akerson v. Gupta*, 458 F. Supp. 189 (E.D. Mo. 1978); *Ohio Co. v. Rosemeier; Westamerica Securities, Inc. v. Cornelius,* 520 P.2d 1262 (1974). Further, the A.L.R. *Messersmith* cited is titled "effect, as between stockbroker and customer, of broker's mistaken sale of security other than that intended by customer." *See* 48 A.L.R 3d 513.

Second, every Restatement cited in *Messersmith* involved restitution. The Restatement states that restitution is not available where a valid contract exists. RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT (2011). "A valid contract defines the obligations of

the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment." *Id.* at § 2. It also states,

> "Restitution claims of great practical significance arise in a contractual context, but they occur at the margins, when a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations." Contract is superior to restitution as a means of regulating voluntary transfers because it eliminates, or minimizes, the fundamental difficulty of valuation. Considerations of both justice and efficiency require that private transfers be made pursuant to contract whenever reasonably possible, and that the parties' own definition of their respective obligations—assuming the validity of their agreement by all pertinent tests—take precedence over the obligations that the law would impose in the absence of agreement. Restitution is accordingly subordinate to contract as an organizing principle of private relationships, and the terms of an enforceable agreement normally displace any claim of unjust enrichment within their reach." *Id.*

To conclude, the *Messersmith* case is distinct from the present situation. First, the *Messersmith* Court applied equitable principles only after the Court found the contract invalid due to mutual mistake. Second, *Messersmith's* holding only applies specifically to the sale of securities and bonds. Here, there is a valid contract. No facts indicate a mutual mistake or any reason why the lease should be invalidated. This is not a dispute over the sale of securities or bonds. *Messersmith* is not applicable and a claim for restitution or "money paid by mistake" is not appropriate because there is a valid contract between Safeway and WY Plaza.

In the event laches did not bar this suit, the Court finds that neither "money had and received" or "money paid by mistake" are viable claims in this case. A valid contract exists between the parties and the Court cannot apply equitable remedies of unjust enrichment or restitution.

### E.  Attorney's Fees

The Court declines to award attorney fees.

CONCLUSION

"The defense of laches is bottomed on the principle that equity aids the vigilant, not those who sleep on their rights." *Park County Resource Council, Inc. v. United States Dep't of Agriculture*, 817 F.2d 609, 618, (U.S. App. 1987). Safeway slept on their rights under Article 20(d) for nearly seventeen years. No reasonable juror could conclude Safeway's delay is excusable or WY Plaza is not prejudiced from the delay. Granting relief for Safeway would work an inequity and laches must be applied.

Accordingly, as a matter of law, WY Plaza is entitled to summary judgment on the defense of laches. Laches is a dispositive affirmative defense and the Court finds in favor of WY Plaza on all claims. Even if the claims were not barred by the doctrine of laches, the Court finds WY Plaza did not breach the contract and did not breach the covenant of good faith and fair dealing. Additionally, the Court finds the claims of "money had and received" and "money paid by mistake" fail because there is a valid contract between the parties.

NOW, THEREFORE, IT IS ORDERED Defendant's Motion for Summary Judgment [Doc. 25] is GRANTED.

NOW, THEREFORE IT IS FURTHER ORDERED Plaintiff's Motion for Summary Judgment [Doc. 23] is DENIED.

Dated this 18th day of October, 2020.

Kelly H. Rankin
United States Magistrate Judge